FILED'18 MAY 8 16:20 USDC-ORM

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## MEDFORD DIVISION

| | |
|---|---|
| Jeffery L. Madsen and Julie H. Madsen<br>As Trustee's for BACSS Trust<br><br>    Plaintiffs<br><br>v.<br><br>BANK OF AMERICA N.A.,<br>BANK OF NEW YORK MELLON, F/K/A<br>BANK OF NEW YORK, AS TRUSTEE<br>FOR THE CERTIFICATEHOLDERS OF<br>CWALT, INC., ALTERNATIVE LOAN TRUST<br>2005-38, MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2005-38,<br>NEW PENN FINANCIAL, LLC<br>dba SHELLPOINT MORTGAGE SERVICING,<br>QUALITY LOAN SERVICE CORPORATION<br>dba QUALITY LOAN SERVICE CORPORATION<br>OF WASHINGTON,<br>MORTGAGE INVESTORS GROUP,<br>COUNTRYWIDE HOME LOANS<br><br><br>Defendant(s)'s | CASE NO. 618-CV-00803-CL<br><br><br><br><br>**PLAINTIFFS COMPLAINT FOR**<br>**JUDGEMENT ON TILA AND FDCPA**<br>**VIOLATIONS AND IDENTITY THEFT**<br><br><br>DEMAND FOR JURY TRIAL |

COMES NOW Plaintiffs Jeff Madsen and Julie Madsen *in Propria Persona* as Trustee's

for BACSS Trust and complain and allege:

### I.    The Parties to This Complaint

A. The Plaintiffs Jeff Madsen and Julie Madsen as Trustee's for BACSS Trust and the

property in question is located at 1070 Pleasant Way, Ashland, Oregon 97520

Ph. 541-326-7864, email – fro756@gmail.com

Plaintiffs Jeff Madsen and Julie Madsen are natural persons and live in the State of Oregon.

B.   The Defendant(s) - BANK OF AMERICA, N.A., is a corporation organized and existing under the laws of the United States of America with its principal executive offices at 100 N. Tryon St., Charlotte, NC, 28255.

C.   The Defendant(s) - BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-38, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38 is a corporation organized and existing under the laws of the United States of America with its principal executive offices at 101 Barclay St. 8W, New York, NY 10286

D.   The Defendant(s) – NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING is a corporation organized and existing under the laws of the United States of America with its principal executive offices at 55 Beattie Place, Suite 110, Greenville, South Carolina 29601.

E.   The Defendant(s) – QUALITY LOAN SERVICE CORPORATION dba QUALITY LOAN SERVICE CORPORATION OF WASHINGTON is a corporation organized and existing under the laws of the United States of America with its principal executive offices at 411 Ivy Street, San Diego, California 92101.

F.    The Defendant(s) – MORTGAGE INVESTORS GROUP the original lender reflected as loan number 1042221 in the deed of trust, was a general partnership organized under the laws of the United States of America located in Irvine, California. It is out of business and no longer exists.

G.    The Defendant(s) - COUNTRYWIDE HOME LOANS was a corporation organized under the laws of the United States of America with its principal executive offices at Dallas, Texas. It was sold to BANK OF AMERICA, N.A. and no longer exists.

## COUNT I - COMPLAINT FOR VIOLATIONS OF THE TRUTH IN LENDING ACT (TILA), 15 U.S.C. § 1635

### II- JURISDICTION AND VENUE

#### A- JURISDICTION

##### Diversity of Citizenship

1.    Diversity jurisdiction under 28 U.S.C. § 1332 exists because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The named parties are of completely diverse citizenships. The Property is situated in the State of Oregon and the plaintiffs are residents of Oregon. Defendant(s) Mortgage Investors Group ("MIG") had its office at 16257 Laguna Canyon Road #100, Irvine, California 92618. The business has closed and no longer exists.

2.    Countrywide Home Loans ("CW") of Dallas, Texas acquired the promissory note and
trust deed of the property in this action from MIG in 2005, and Countrywide was a
corporation that no longer exists.

3. Bank of America, N.A., ("BOA") purchased Countrywide on or about July 8, 2008. Bank
of America is a national banking association with its main office located at 100 N. Tryon St.,
Charlotte, NC, 28255,  Defendant(s) BOA is a citizen of North Carolina for purposes of
diversity jurisdiction. See 28 U.S.C. § 1332(c)(1).

4.    Bank of New York Mellon, f/k/a Bank of New York, as trustee, in trust for the certificate
holders of CWALT, INC., alternative loan trust 2005-38, mortgage pass-through certificates
series 2005-38. (BNYM). BNYM is a banking association with its main office located at 101
Barclay St. 8W, New York, NY 10286. Defendant(s) BNYM is a citizen of New York for
purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(1).

5.   New Penn Financial LLC, dba Shellpoint Mortgage Servicing ("SMS") a corporation, is
allegedly a mortgage servicing company with its main office located at 55 Beattie Place,
Suite 110, Greenville, South Carolina 29601. Defendant(s) SMS is a citizen of South
Carolina for purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(1).

6.   Quality Loan Service Corporation dba Quality Loan Service Corporation of Washington
("QLSC") a corporation is a foreclosure service company with its main office located at 411
Ivy Street, San Diego, California 92101.  Defendant(s) QLSC is a citizen of California for
purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(1).

None of the Defendant(s) are citizens of the state of Oregon.

### Amount in Controversy

6.   The amount in controversy exceeds $75,000/ exclusive of interest and costs. This
Complaint concerns a loan with an original balance of $340,000. With a principal balance
allegedly due and owing of $370,489.72 as of April 20, 2018.

### Federal Question Jurisdiction

7.   In addition, as a separate basis for jurisdiction, the United States District Court of the
District of Oregon has original jurisdiction over this action under 28 U.S.C. 1331 (federal
question). As explained below, the action presents questions of federal law under the Federal
Truth in Lending Act ("TILA") 15 U.S.C. § 1635, Regulation Z § 226.23, relating to
rescission rights, that must be decided in order for Plaintiffs to prevail on these claims.

**B.    VENUE**

8.   Venue is proper as venue for all claims lies in the District of Oregon since Plaintiffs
claims arose from acts of the Defendant(s) perpetrated therein or perpetrated on an Oregon
resident through the phone or mail system.

## III - NATURE OF THE ACTION

9.   Plaintiffs purchased the property at 1070 Pleasant Way, Ashland Oregon, 97520 for
$265,000 on June 6, 2002. A Warranty Deed was issued to Plaintiffs and recorded as Sale
Document no. 02-31916 in Jackson County Official Records on June 12, 2002. *See Exhibit A.*

10.   Plaintiffs refinanced the subject property with Mortgage Investors Group on June 14,
2005 in the amount of $340,000. A Deed of Trust was issued to Plaintiffs and recorded as
Sale Document no. 2005-051640 in Jackson County Official Records on August 25, 2005. An

Adjustable Rate Note was issued with loan number 1042221. MIG immediately sold its

security interest to Countrywide Home Loans.   *See Exhibit A*   MIG was a correspondent

lender acting as a feeder to CW. Finding unsuspecting customers who were deceptively lured

into taking out loans which had higher adjustable rates than they were promised with negative

amortization and then dumping them onto CW. See, **Ralston v. Mortgage Investors Group**,

*case no. CV-08-00536* (N.D. Cal.) class action against financial institutions that failed to

properly disclose negative amortization features of loan, which resulted in the increase of loan

balances for borrowers resulting in a settlement of $100,150,000. Mortgage Investors Group

is out of business and no longer exists.

11.    Plaintiffs were unhappy with the customer service and shoddy treatment they received

from CW that seemed to be widespread and when requested answers to their questions they

were given the run around or ignored. The Plaintiffs discovered that they were not given the

required Notice of Rescission/Right to Cancel and other required material disclosures and

requested these a number of times from MIG and also CW. There was no response to those

requests.

12.    During this time Plaintiffs became aware that there were violations under the Truth-In-

Lending-Act (TILA), such as the failure to provide proper "Notices of Rescission" on the

2005 loan and the falsifying of Plaintiffs income on his "Residential Loan Application"

without his knowledge and consent. Plaintiffs sent a written "Notice of Rescission" on the

loan via certified mail to MIG and CW on March 25, 2008. At the time of filing the "Notice

of Rescission" Plaintiffs were current on their payments to CW on the promissory note.   *See*

*Exhibit B*

13.   After mailing the Notice of Rescission Plaintiffs received no response from MIG. Plaintiffs did receive a letter from CW saying that they had received our correspondence and would contact us after investigating. After that Plaintiffs did not receive any other response by phone or mail with CW.

14.   Defendant(s) CW was involved in a lot of shady and illegal deals during this time frame and was named in large numbers of lawsuits by unhappy customers. Once the largest mortgage lender in the US, they were found guilty of defrauding both Fannie Mae and Freddie Mac – losing $848 million on loans purchased from CW – according to a So. District NY lawsuit. *In March 2008, it was reported that the Federal Bureau of Investigation (FBI) was investigating Countrywide for possible fraud relating to home loans and mortgages.*[35] *Source – Wikipedia.* Countrywide Home Loans was purchased by Bank of America (BOA) on or about July 8, 2008.

15.   Defendant(s) BOA was responsible for the things that CW had done prior to being acquired by BOA. BOA was involved in many lawsuits and paid out over $1 billion to settle these cases. For example, $335 million to settle claims on CW discriminatory lending practices. $108 million to SEC for excessive fees charged to homeowners in foreclosure. And $600 million paid out to settle claims with pension investors for fraudulent mortgage backed securities. CW has gone down as one of the most corrupt and dishonest companies in US history. So many of their practices lead to the crash of the mortgage and financial markets in the US in 2008. *"In 2010, the bank was accused by the U.S. government of defrauding schools, hospitals, and dozens of state and local government organizations via misconduct and illegal activities involving the investment of proceeds from municipal bond sales. As a result, the bank agreed to pay $137.7 million, including $25 million to the Internal Revenue service and*

*$4.5 million to state attorney general, to the affected organizations to settle the allegations."*[76] - *Source - Wikipedia*

16.     After acquiring CW, Defendant(s) BOA began using Select Portfolio Servicing, Inc. (SPS) as the mortgage servicer on the loan in question. On or about June 19, 2015 Defendant(s) BOA issued a Trustee Notice of Sale, through Northwest Trustee Services, Inc. (NTS) of Bellevue, WA as Trustee along with SPS also sending Notice of a scheduled foreclosure sale on 10-29-2015, claiming that a new Trustee had emerged in the creditor – Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the certificateholders of Cwalt Inc., Alternative Loan Trust 2005-38, Mortgage Pass-Through Certificates Series 2005-38.     *See Exhibit C*

17.     On or about October 27, 2015 Plaintiff Julie Madsen filed for bankruptcy protection under § 727 of Title 11, United States Code which created an automatic stay of the foreclosure sale. The trustee attempted to continue with the sale on the courthouse steps anyways and Plaintiffs filed an adversary proceeding with the bankruptcy court for this violation of the automatic stay. Plaintiff was awarded a discharge of debts under chapter 7 of the bankruptcy code on May 31, 2016.

18.     In October of 2017, Defendant(s) SMS began threatening to foreclose on Plaintiffs home as they filed their intention to do so by participating in the Oregon Foreclosure Avoidance Program (OFAP). This program is required by the State of Oregon prior to a Lender beginning the foreclosure process with a Oregon homeowner. In the paper work for the OFAP and its resolution conference SMS is wrongly listed as Plaintiffs lender. This is incorrect as they have not loaned Plaintiffs anything. They are making demands for payment of monies they are not

entitled to, and requesting personal and financial information that they would already have if they were Plaintiff's lender on the loan in question. *See Exhibit E*   The resolution conferences held in March and May, 2018 confirmed that the Defendants do not have the right or authority to foreclose and lack standing to enforce the note.

Plaintiffs recently became aware that other moves are afoot as there was a "Correction Assignment of Deed of Trust" recorded on 8-4-2017 and an "Appointment of Successor Trustee" recorded on 11-2-2017. These actions are totally invalid and without merit as the rights of the Defendant(s) on the Trust Deed have been extinguished since the rescission was effected on March 25, 2008 rendering all claims to a security interest in the subject property null and void. All Defendant(s) lack standing in the subject property, they simply have no interest and are NOT the holders in due course of the Trust Deed because after the rescission there was no security interest to sell, assign or transfer to any of the Defendant(s).

## IV.  ISSUES PRESENTED & CLAIMS FOR RELIEF

19.  The Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23 allow for a borrower to rescind the Note and Deed of Trust by an operation of law. This occurred in this case as of March 25, 2008 when the Plaintiffs sent the rescission notice to both MIG and CW and more than 20 days had elapsed without Defendant(s) filing a formal response, refunding all monies paid and unwinding the loan or filing suit challenging Plaintiffs Notice of Rescission.

20.  The undisputed evidence shows that Plaintiffs timely rescinded their note and deed of trust under TILA 15 U.S.C. § 1635(a) on March 25, 2008, effectively voiding all contracts and debt. Therefore, Defendant(s) had no standing to initiate a foreclosure in October, 2015

or to collect payments under the contracts because those contracts were voided and extinguished by operation of law on March 25, 2008.

21.    This loan was the result of predatory lending practices, it was based on illegal and unfair business practices and fraud that was designed to force homeowners into foreclosure. The law does not stand for such practices. Bank of America has no standing and has never had any valid title or legal right to Plaintiffs payments or a valid secured interest. How could it? Countrywide Home Loans was not legally able to transfer a valid security interest after the Plaintiffs rescission was effected on March 25, 2008. BOA did not purchase CW until July 8, 2008 almost 4 months after Plaintiffs rescinded the loan.

22.    The facts are clear and undisputed, Plaintiffs loan was rescinded and extinguished by the action of mailing the Notice of Rescission on March 25, 2008 and no party could obtain any rights or interest to enforce contracts that were made void after this date.

## PLAINTIFFS ARE ENTITLED TO RELIEF BASED ON THEIR LEGAL RESCISSION UNDER TILA

23.    TILA gives borrowers a "right to rescind" for some kinds of consumer credit transactions 15 U.S.C. § 1635(a); see 15 U.S.C. § 1635(d) (right to rescind is unwaivable except in emergency circumstances). Rescission applies to transactions in which a creditor takes a security interest in an obligor's "principal dwelling" and in return, provides money on property the obligor uses for non-business purposes. 15 U.S.C. § 1635(a). In 1974 TILA was amended to limit the time an obligor had to rescind a transaction to three years after the consummation of the transaction or sale of the property. 15 U.S.C. § 1635(f).

24. Of primary concern, and importance, as *clarified* in the United States Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.,* 135 S. Ct. 790, 190 L. Ed. 2d 650, 574 U.S. (2015), the obligor's exercise of the rescission triggers a series of steps through which the transaction is unwound. *See Beach,* 523 U.S. at 412-413. First, when an obligor exercises his right to rescind, he is not liable for any finance charge or other charge, and *any security interest given by the obligor becomes void upon rescission.* 15 U.S.C. § 1635(b). Second, within twenty days after receipt of the notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to *reflect termination of any security interest* created under the transaction. *Ibid.* Third, upon performance by the creditor's obligations under this section, the obligor shall tender any property the creditor has previously delivered (or its reasonable value). *Ibid* Pursuant to Reg Z notice is given by mail, telegram, or other means of written communication. 12 C.F.R. 226.23(a)(2) ; See 12 C.F.R. Pt. 226, Apps H-8, H-9 (Model forms for exercising Rescission Right); 12 C.F.R.1026.23(a)(2).

25. Erroneously, lower Courts have misinterpreted § 1635 as requiring the obligor to file a lawsuit to effect rescission. The Plaintiffs understanding of their rights were misinformed by the misinterpretations of the lower courts. However the plain language of the statute puts no such requirement on the obligor. That provision "says nothing in terms of an action" or a "suit's commencement", rather it speaks to the "duration" of the rescission right. *Beach v. Ocwen Fed. Bank, 523* U.S. 410,417 (1998). The *Supreme Court* found that nowhere does § 1635(a) allow for a debate as to disputed or undisputed notices, simply put the transaction and its contracts are *void as a matter* of law upon mailing of the Notice of Rescission. *Jesinoski, supra,* at 793. "Section 1635(a) explains in unequivocal terms how the right to

rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years." *Jesinoski, 574 U.S. ____ (2015) Opinion of Supreme Court of the United States.* The court found that under Section 1635, once notice of rescission has been provided, the creditor must either begin the unwinding process by returning the borrower's money and taking action to reflect the termination of the security interest, or filing a lawsuit to dispute the plaintiff's right to rescind. If neither occurs within the TILA statute of limitations, the court concluded that "the rescission and voiding of the security interest are effective as a matter of law as of the date of the notice." Thus, according to this decision, the burden of filing suit is upon creditors if they believe a borrower's rescission is improper or invalid.

26.  Based on the clarification provided by the *Supreme Court* of the TILA rescission, Plaintiffs contract became *void* as of March 25, 2008. The loan no longer exists at that point: the contracts are void, regardless whether the creditor meets the legal requirement to return all funds paid on the loan and effectively terminates the security instrument. After that point any acts by any party based on the loan or contract are illegal.

## Burden of Proof and Elements

27.  All that the Plaintiffs are required to show is that the loan was rescinded by the act of the written notice. That is the only requirement, Period. A borrower's written notice of the intent to rescind is complete and effective solely upon the proper delivery of a rescission notice.

**Elements are a matter of law Proven by No Response to Letter.**

28.  The Rescission was effective as a Matter of Law as of  March 25, 2008.

The letter was mailed on March 25, 2008, the creditor had 20 days to file an action disputing the notice of rescission and chose not to do so.  The loan and contracts are void and must be cancelled effective March 25, 2008.

## V.    RELIEF REQUESTED

29.  Plaintiffs hereby allege and incorporate by reference the information in paragraphs 1-28 and the previous allegations contained as if set forth fully herein.

WHEREFORE, Plaintiffs hereby requests Relief per the March 25, 2008 rescission as follows:

a.  That Plaintiffs be listed in title to the subject property as the sole owners which is their right.

b.  That all documents recorded on or against title to the subject property in the Jackson County public land records after March 25, 2008 be declared null and void.

c.  That the Defendant(s) be barred from unjust enrichment by attempting to foreclosure without having the true security interest in the subject property.

d.  That the Defendant(s) be ordered to cease and desist all foreclosure related activities and enjoined from any and all attempts to foreclose on the subject property.

e. That the Defendant(s) be ordered to remove all negative information on the subject property from the 3 major credit bureaus, Equifax, TransUnion and Experian.

## COUNT II – COMPLAINT FOR VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA); 15 U.S.C. § 1692 ET SEQ.

30. Come now the plaintiffs Jeff and Julie Madsen and sue the Defendant(s)(s) BANK OF AMERICA, N.A. , and BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-38, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38, NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICES, INC., and QUALITY LOAN SERVICE CORPORATION dba QUALITY LOAN SERVICE CORPORATION OF WASHINGTON for penalties and actual damages for unfair and deceptive collection practices in violation of the Fair Debt Collection Practices Act, and for other relief as set forth herein.

31. The plaintiffs have resided in Jackson County, Oregon at the address known as 1070 Pleasant Way, Ashland, Oregon for all times material to this complaint. The Defendant Bank of America, N.A. (BOA), is a corporation doing business in the State of Oregon with its principle place of business at the address of 100 N. Tryon St., Charlotte, NC, 28255. The Defendant Bank of New York Mellon, f/k/a Bank of New York, as trustee, in trust for the registered holders of alternative loan trust 2005-38, mortgage pass-through certificates series 2005-38. (BNYM),is a corporation doing business in the State of Oregon with its principle place of business at the address of 101 Barclay St. 8W, New York, NY 10286. The Defendant New Penn Financial LLC, dba Shellpoint Mortgage Servicing (SMS) is a

corporation doing business in the State of Oregon with its principle place of business at the address of 55 Beattie Place, Suite 110, Greenville, South Carolina 29601. The Defendant Quality Loan Service Corporation dba Quality Loan Service Corporation of Washington ("QLSC") is a corporation doing business in the State of Oregon with its principle place of business at the address 411 Ivy Street, San Diego, California 92101.

32.    All of the Defendant(s) BOA, BNYM, SMS, and QLSC are a debt collector as defined under Title 15 U.S.C. §1692(a). Defendant(s) have undertaken actions that involve the collection of a consumer debt against the plaintiffs. The debt collection involves a purported debt for personal, family or household purposes.

33.    Defendant(s) are a debt collector as defined under Title 15 U.S.C. §1692(a)(6) and are not excluded by any provision of what defines a "debt collector" under this statute. This is a complaint for unfair and deceptive collection practices involving collateral against which the Defendant(s) have falsely asserted various rights or claims. The subject property that has given rise to this complaint is known as a trust deed, and rights thereunder, and land with fixtures on the land that is encumbered by a trust deed recorded in Jackson County, Oregon, a true and correct copy of which is attached.    *See Exhibit A*

### PLAIN STATEMENT

34.    Plaintiffs entered into a collateral agreement known as a mortgage involving their property as described herein. This obligation was incurred as a financial obligation that

was primarily for family, personal or household purposes. This mortgage did not name or confer any power upon the Defendant(s).

35.   At some time after this mortgage was recorded, the Defendant(s) began attempting to foreclose under the terms of the mortgage, as if it were the holder or in control of the note and mortgage.    *See Exhibit F*

36.   The plaintiffs are the mortgagor in a trust deed that was recorded on the date of August 25th, 2005, in Jackson County, Oregon, in the amount of $340,000. The deed secured the payment of a promissory note made payable to MORTGAGE INVESTORS GROUP, the lender stated on the trust deed. The trustee's name in this instrument is CHARLES E. TONKIN, II, PRESIDENT. There were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed).

37.   The Defendant(s) have somehow acquired the personal and banking information of each of the plaintiffs and has used that information for their own personal gain and benefit without any permissible purpose.

38.   Within the previous eighteen months, the Defendant(s) began sending written communication to the plaintiffs stating that it was representing various parties having rights under the same trust deed, or at least plaintiffs understood that it was representing

parties, including the other Defendant(s), the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiffs property.

39. Plaintiffs asked the Defendant(s) to provide verification that these parties it was supposed to have been representing, whose names it was using, or who were aware of its actions. No response was given. The plaintiffs explained that the reason for these requests were, in part, because none of these parties were named in the mortgage referenced by this Defendant(s).

40. The Defendant(s) sent written communication to the plaintiffs stating that it was representing various parties, or at least plaintiffs understood that it was representing parties, including the other Defendant(s), the trustee, a bank, a law firm, etc. who were all claiming some rights in the plaintiff's property.

41. Plaintiffs also asked the Defendant(s) to explain how it obtained the personal and private banking, financial and identifying information of the plaintiffs. The Defendant(s) failed or refused to answer these questions, in spite of being advised that they were in violation of the Fair Debt Collection Practices Act and may be subject to penalties and actual damages for continuing to undertake these actions.

42. The purported debt is not a debt held or collected under the name of the Defendant(s). The Defendant(s) made false representations that it was the holder of a note or promise to pay in which the plaintiffs owed the Defendant(s).

43.   The Defendant(s) made false representations that it had rights to foreclose against the plaintiff's property (home) under the provisions of a trust deed that is recorded against the title of the plaintiff's property in the county where the property is situated. The Defendant(s) are utilizing the statutory foreclosure process for this state for the purpose of engaging in a scheme that aims to conceal the identity, source, and destination of illicitly-obtained money, specifically the plaintiff's promissory note.  Defendant(s) have failed to provide proof that they own the promissory note or can trace its assignment.

44.   First, the Defendant(s) acquired a copy, forged or counterfeit version of the plaintiff's promissory note. The actual steps taken are unclear at this time but there was no valuable consideration given in the process and the original lender MIG no longer exists.  Second, the Defendant(s) are and have been employing a complex scheme, including what has become known recently as "securitization", and then assignments, trusteeships and other counter parties or affiliates such as "serving agents" to obscure who initially received the money.

45.   Finally, the parties involved have been compensated in a list of different ways from this scheme, such as removing the liability from accounting records and obtaining tax benefits from the United States, sustaining the illusion of solvency for pension funds of those government officers who participate in the scheme, including attorneys and clerks of the court. And all of these steps have been undertaken in a very complex, obscure and indirect way so as to conceal who did what and when.

46. The Defendant(s) requested certain financial disclosures from the plaintiffs claiming that the disclosures would persuade the Defendant(s) to cease its foreclosure actions provided that money was paid by the plaintiffs to the Defendant(s) or its privies. The Defendant(s) did not have the typical credit information of the plaintiffs, such as a social security number, or date of birth or other banking information that a creditor would normally be expected to have already obtained before a debt obligation was established.

47. The Defendant(s) has used a false or fictitious name in the undertaking of its collection actions. The Defendant(s) has used a name other than the true name of its business, company or organization.

48. After several written requests, the Defendant(s) has refused to identify its owners, principals or interests it claims to have in the plaintiff's property. Instead of making these disclosures, Defendant(s) has falsely represented that it does have certain legal rights under the trust deed and that it has the right to foreclose if the plaintiffs fails or refuses to provide more credit, banking, financial, personal and other identifying information along with agreeing to making regular payments of money to the Defendant(s) or its privies. *See Exhibit G*

49. The Defendant(s) failed or refused to provide an accounting of its claim showing any unpaid balance and instead simply demanded money in exchange for not foreclosing and has only provided copies of records that anyone could obtain from the county recorders' office.

50.   The Defendant(s) have falsely represented the name of the creditor to whom it alleges the debt is owed. The Defendant(s) have threatened to undertake a foreclosure action against the plaintiffs when it has no such rights to do so. The Defendant(s) falsely represented that if the plaintiffs failed or refused to cooperate by providing financial, banking, credit, personal and other identifying information along with money, that it would sell the plaintiffs property at a public auction.

51.   Since August of 2017, the Defendant(s) have created and filed with the County Recorder's office papers purporting to be a "Correction Assignment of Deed of Trust" and "Appointment of Successor Trustee". This papers claim to make changes to the trust deed that are unauthorized, without authority, misrepresenting the beneficiary and trustee and Defendant(s) failed to notify the Plaintiffs of their recorded papers.   *See Exhibit D*

52.   The Defendant(s) delivered to the plaintiff's written communications that were made to look like or falsely represent documents authorized, issued, or approved by a court, official, or agency of the United States or the state, by using words that would give a false impression of the document's source, authorization, or approval. The Defendant(s) have falsely represented that the plaintiffs credit accounts were sold to innocent purchaser's for value. The Defendant(s) failed to provide the Plaintiffs with validation of debt within five business days of contacting them.

53. The Defendant(s) have undertaken actions to intimidate the plaintiffs by having individuals trespass on their property and take photographs without permission, look through their windows and knock on the door to ask if they can take more photographs of the backyard and inside of the home for purposes of foreclosure.

54. The Plaintiffs have suffered actual damages as a result of the Defendant(s) attempted foreclosure of plaintiff's property, as well as suffering from unjustified and abusive invasions of personal privacy at the Plaintiffs home and workplace. Based on these allegations, the Defendant(s) violations of §§ 1692e(4) and (5), and 1692g(a) and (b) of the FDCPA. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

55. This is an action for damages exceeding $75,000.

56. Plaintiffs demand a jury trial.

57. As a result of each and every violation of the FDCPA, Plaintiffs are entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs, if any, pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant(s), jointly and severally.

## REQUEST FOR RELIEF

58.   Plaintiffs hereby allege and incorporate by reference the information in paragraphs 29-57 and the previous allegations contained as if set forth fully herein.

59.   WHEREFORE, Plaintiffs demand that judgment be entered against each Defendant, jointly and severally, and Plaintiffs be awarded damages from each Defendant, as follows:

A. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

B. An award of costs of litigation and reasonable attorney's fees, if any, pursuant to 15 U.S.C. § 1692k(a)(3);

C. An award of actual damages;

D. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury on all issues so triable as a matter of law.

## COMPLAINT FOR IDENTITY THEFT

60.   Come now the plaintiffs Jeff and Julie Madsen and sue the defendant(s) BANK OF AMERICA N.A., BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-38, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38, NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING, and QUALITY LOAN SERVICE CORPORATION dba QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, in the following legal action to protect a private civil right and to

compel a civil remedy for damages resulting from the theft of the plaintiff's personal,

financial, banking and identifying information, under 18 U.S.C. § 1341- Mail Fraud,

18 U.S.C. § 1028 - Identification Fraud, and 18 U.S. Code § 1028A - Aggravated identity

theft and alleges the following:

## JURISDICTION

61.   This is an action at law and this court has original jurisdiction pursuant to Article

III, Section 2 of the United States Constitution and Title 28 U.S.C. §1331.

This is a complaint for damages that exceeds $75,000.

There is a diversity of citizenship between the plaintiffs and defendant(s).

## VENUE

62.   The plaintiffs have resided in Jackson County, Oregon at the address known as 1070

Pleasant Way, Ashland, Oregon for all times material to this complaint. The Defendant

Bank of America, N.A. (BOA), is a corporation doing business in the State of Oregon

with its principle place of business at the address of 100 N. Tryon St., Charlotte, NC,

28255. The Defendant Bank of New York Mellon, f/k/a Bank of New York, as trustee, in

trust for the registered holders of alternative loan trust 2005-38, mortgage pass-through

certificates series 2005-38. (BNYM), is a corporation n doing business in the State of

Oregon with its principle place of business at the address of 101 Barclay St. 8W, New

York, NY 10286.  The Defendant New Penn Financial LLC, dba Shellpoint Mortgage

Servicing (SMS) is a corporation doing business in the State of Oregon with its principle

place of business at the address of 55 Beattie Place, Suite 110, Greenville, South Carolina

29601. The Defendant Quality Loan Service Corporation dba Quality Loan Service Corporation of Washington ("QLSC") is a corporation doing business in the State of Oregon with its principle place of business at the address 411 Ivy Street, San Diego, California 92101.

## PLAIN STATEMENT

63.  The plaintiffs are the mortgagor in a trust deed that was recorded on the date of August 25th 2005, in Jackson County, Oregon, in the amount of $340,000. The deed secured the payment of a promissory note made payable to MORTGAGE INVESTORS GROUP, the lender stated on the trust deed. The trustee's name in this instrument is CHARLES E. TONKIN, II, PRESIDENT.

64.  There were no other parties identified as having an interest in this trust deed or having any rights thereunder, within the instruments, (note and trust deed). This complaint concerns the defendant(s)' actions and conduct whereby it acquired the plaintiff's credit and financial information, at least enough to make it appear as if the defendant(s)' were working with the lender in the trust deed. The defendant(s) then proceeded to send written communications to the plaintiffs stating that they now either had rights to foreclose under the trust deed or that it was working with other parties who had rights to foreclose, unless the plaintiffs made more financial disclosures and modified payment arrangements to the defendant(s).

65.  The defendant(s) pretended to help the plaintiffs and lead them into making more and more financial disclosures and then either discontinued the communication after it

obtained what it wanted, or created a situation to make it appear as if the plaintiffs did not

qualify, but then never returned or certified the destruction of the records and information

obtained about the plaintiff.

## STATEMENTS OF FACT AND DEFINITIONS

66.   The term "identity theft" includes the act of stealing one's mail or looking through

one's private home and/or commercial business trash. Sometimes the theft is undertaken

by simply communicating with the victim, such as via mail, telephone and sometimes

during service calls such as a plumber casing a house and then giving the information he

discovers to a third party for money.

67.   Sometimes identity thieves steal your wallet or purse, and sometimes they only take

the information in your wallet or purse. They will also fraudulently pose as potential

landlords, tax collector, banking organizations, attorneys, prospective or current

employers, or creditors to try to obtain your personal data under false pretenses.

The methods of identity theft have become known by the new term "phishing". The term

"phishing" is defined as someone is tricked into giving up personal information, typically

by sending out what looks like official communications from banks, credit unions, or

credit card companies asking to confirm private information including personal

identification numbers and other critical identifiers. Some go so far as to file a "change of

address" form to divert your mail to a drop or Post Office Box address.

68. The most recent example comes from the expanding mortgage foreclosure segment of the finance market; whereby, individuals gather together public records such as trust deeds and create promissory notes and copy signatures from the trust deeds to the notes and use those copies along with other records created by software, to commission attorneys to begin a foreclosure action. The attorneys then contact a homeowner and tell him that his mortgage is in default, and usually claim some unknown third party to whom it's in default, and that to avoid foreclosure, he will have to provide financial disclosures for a "loan modification'. Out of fear, the unsuspecting homeowner provides this information without any conditions, such as never being advised of the perpetrator's document retention policy or what the financial information will be used for. Many organizations are able to obtain credit information about the homeowner simply by paying a membership fee to Equifax. This information is then used to obtain more information. In probably every case, this financial information is sold or traded to third parties and utilized in making false reports to the IRS, such as on Form 1099.

69. Identifying information also includes a person's name, telephone number, date of birth, mother's maiden name, driver's license number, state identification number, or any other piece of information that can identify a person.

## COUNT III – COMPLAINT FOR IDENTITY THEFT

70. Come now the plaintiffs Jeff and Julie Madsen and sue the defendant(s) BANK OF AMERICA N.A., BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC.,

ALTERNATIVE LOAN TRUST 2005-38, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38,  NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING, and QUALITY LOAN SERVICE CORPORATION dba QUALITY LOAN SERVICE CORPORATION OF WASHINGTON  in the following legal action to protect a private civil right and to compel a civil remedy for damages resulting from the theft of the plaintiff's personal, financial, banking and identifying information, and alleges the following:

71.  Plaintiffs hereby allege and incorporate by reference the information in paragraphs 1-70 and the previous allegations contained as if set forth fully herein. Jurisdiction and venue are proper and this complaint is an action at law and is properly before this court.

72.  Plaintiff's "private information", as the term is used in this complaint and accepted commonly in our modern community, includes but is not limited to the likeness of the plaintiff, and his/her personal identifying information, banking, financial and credit information, and any other personal information that is or can be used by the plaintiff for his/her own personal and professional benefits.

73.  Plaintiffs have the right to keep their private information and records from third parties, and have a right to rely upon the third party to only request such information for legitimate and legal purposes. The plaintiff's private records include the information appearing on his birth certificate, tax records, banking records, financial and other personal information and information that identifies the plaintiff, such as his/her likeness,

photographs, videos, and other records which have not been deliberately published to third parties.

74. Beginning from around December 2016 and continuing through the present day, the plaintiffs were contacted by the defendant(s) and other organizations affiliated with, and that appeared to be working for the defendant(s). Plaintiffs have reason to believe that these organizations where owned and operated by the defendant(s) and being used to conceal the identities of the defendant(s). These organizations threatened the plaintiffs with the taking their home and money unless they provided certain financial, personal, banking and identifying information to the defendant(s). Copies of these written communications are attached as *Exhibit E.*

75. The defendant(s) also made inquiries of the plaintiff credit report but did not have a permissible purpose. The defendant(s) obtained records from the public domain that pertain to the plaintiff's property and rights to his property, and then use these records to create additional records and convince the personnel working in the court system to participate in a public auction of the plaintiff's home.

76. The defendant(s) have deliberately and willfully, falsely presented itself and impersonated itself to the plaintiffs as another person to obtain the plaintiff's property for purposes not permitted by law or agreement. The defendant(s) had an affirmative duty to disclose the purposes for which it coerced plaintiff's banking, personal, financial and identifying information. The defendant's actions were deliberate, willful, negligent and

careless. The plaintiffs were never provided with a disclosure of the defendant(s) document retention policy or an explanation of the purposes for which the plaintiff's private information would be used.

77.   The plaintiffs requested a copy of the defendant(s) document retention policy but this request was ignored.

78.   The defendant(s) intentionally and willfully violated the plaintiff's rights to privacy and to keep their private and personal records private. The defendant(s) engaged in communications with the plaintiffs and deceived them into disclosing their private information. The defendant(s) accomplished this by using the information already available in the public domain to make it appear as if the defendant(s) had some legal rights to obtain more of the plaintiff's private information, when the defendant(s) did not have such rights.

79.   After obtaining plaintiff's private information, defendant(s) used this information for its own financial gain and ulterior and undisclosed purposes, and for purposes not permitted by law or by the plaintiffs. The defendant(s) has or intends to file claims with the Internal Revenue Service, such as Form 1099, using the plaintiff's identifying information.

80.   The defendant(s) have or intend to use the plaintiff's private information to sell or trade with third parties for the mutual benefit of these parties, contrary to the interests of

the plaintiffs. Since at least July, 2014, and to the best of plaintiff's knowledge, the defendant(s) have been in possession of plaintiff's private information, and without the consent of the plaintiffs and without legal authority.

## DAMAGES

81.  The plaintiffs have suffered damages as a direct and proximate result of the defendant(s) actions and failures to act.

82.  The plaintiffs have suffered a loss because the defendant(s) has been encumbering the plaintiff's property. The actual damages are: 1. The loss of the money deposited with the lender identified on the mortgage or trust deed lien in the amount of $340,000. 2. Costs and attorney fees associated with defending against the foreclosure process in the amount of $1,200 and 3. Unauthorized use and retention of plaintiff's personal, banking, financial and identifying information resulting in damages that have not yet fully been able to be calculated, but that are estimated to exceed $500,000 as of this date.

83.  Plaintiffs hereby allege and incorporate by reference the information in paragraphs 58-82 and the previous allegations contained as if set forth fully herein.

## REQUEST FOR RELIEF

84.  WHEREFORE, plaintiff demands judgment against the defendant(s) in the aggregate amount of damages alleged in the complaint of $841,200 together with other relief this court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff's hereby demand a trial by jury of all issues so triable as a matter of law.

**Certification and Closing**

85.   Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

86.   A. **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted this 8th day of May, 2018.

Jeffery L. Madsen, As Trustee for BACSS Trust, Plaintiff
Julie H. Madsen, As Trustee for BACSS Trust, Plaintiff
1070 Pleasant Way
Ashland, Oregon 97520
541-326-7864
fro756@gmail.com